## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **LEAGUE OF WOMEN VOTERS OF PENNSYLVANIA, et al.**<br><br>**v.**<br><br>**THE COMMONWEALTH OF PENNSYLVANIA, et al.** | **CIVIL ACTION**<br><br>**NO. 17-5137** |

## MEMORANDUM

**Baylson, J.**                                                          **April 13, 2018**

### I.  Introduction

Plaintiffs League of Women Voters, et al. seek attorney's fees in the amount of $49,616.50 and costs in the amount of $3,120.02 for Defendant Senator Joseph Scarnati's allegedly improper removal of this case to this Court in a challenge to Pennsylvania's congressional map.

This Court must therefore decide whether Plaintiffs may recover fees and costs related to the removal of this case to federal court, whether the work expended was reasonable (and at what rates), and who, ultimately, should be liable.

### II.  Brief History of this Litigation

A short chronology of events is appropriate to set the background for the disposition of this issue.  This case was filed in the Commonwealth Court of Pennsylvania on June 15, 2017, asserting claims brought exclusively under the Pennsylvania Constitution that Congressional districts in Pennsylvania were improperly "gerrymandered" to favor election of Republican congressmen.

After the case was filed, a judge of the Commonwealth Court entered a stay of proceedings on October 16, 2017.   The Pennsylvania Supreme Court, acting on a special writ, vacated the stay

on November 9, 2017 and remanded the matter to the Commonwealth Court for a judge of that court to conduct an evidentiary hearing and make findings of fact by December 31, 2017.

On October 23, 2017, Governor Wolf issued a writ of election to set the date of a special election to fill the then-vacant congressional seat for the Eighteenth District.   That writ of election set the date for the special election for March 13, 2018.

On November 14, 2017, Senator Scarnati removed the Commonwealth Court case to this Court.   Senator Scarnati sought removal under 28 U.S.C. § 1441, and asserted that the removal was timely under 28 U.S.C. § 1446(b)(3) because it was filed within 30 days of receipt of "an amended pleading, motion, order or other paper" making the case removable.   (Removal Pet. ¶¶ 20-22, ECF 1.)   Specifically, Senator Scarnati argued that the writ of election, which he claimed was issued by Governor Wolf pursuant to authority conferred by Article I, Section 2, Clause 4 of the U.S. Constitution, was an "order or other paper" "introduc[ing] a new, central federal question squarely into this matter," such that this court possessed federal question jurisdiction.   (Id.)

The case was assigned to me as a "related" case to Agre v. Wolf, Civil Action No. 17-4392, a gerrymandering case pending before a three judge court pursuant to 28 U.S.C. § 2284(a). Motions to Remand were filed on November 16, 2017 by Plaintiffs and by Defendant Lieutenant Governor Stack (who had not consented to removal), asserting that the removal was improper, and seeking remand to the Pennsylvania Supreme Court.   (Pls.' Mot. to Remand, ECF 2; Stack Mot. to Remand, ECF 5.)   That same day, after this Court had scheduled a hearing for 2:00 PM that afternoon, Senator Scarnati filed an "Emergency Motion to Withdraw Notice of Removal" at 1:30 PM seeking remand on the grounds that House Speaker Turzai did not consent to removal.   (ECF 9.)

2

This Court held the hearing as scheduled at 2:00 PM on November 16, 2017, which some of Plaintiffs' counsel had traveled from Washington, DC to attend.   Thereafter, the Court entered an order remanding the case to the Pennsylvania Supreme Court with prejudice.   (Remand Order, ECF 15.)

At 5:23 PM on November 16, 2017, after the Court entered its order remanding the case, Speaker Turzai docketed a response to the removal motion, to which was attached an e-mail from his counsel to Senator Scarnati's counsel, stating that counsel had not discussed removal under 28 U.S.C. § 1441, but rather under 28 U.S.C. § 1443, which does include a requirement that all defendants consent to removal.   (See ECF 21, Def. Turzai's Resp. to Mot. to Withdraw Notice of Removal.)

On November 30, 2017, Plaintiffs filed the instant motion requesting a total of $52,736.52 in fees and costs associated with the removal.   (ECF 24.)   Senator Scarnati filed a memorandum of law in opposition on December 14, 2017.   (ECF 26.)   Plaintiffs replied on December 21, 2017. (ECF 27.)

### III.    Summary of Parties' Arguments

Plaintiffs assert that Senator Scarnati's removal was improper for several reasons and that they are entitled to fees and costs, which Senator Scarnati disputes.   It is undisputed that Senator Scarnati removed the state court action pursuant to 28 U.S.C. § 1441, the general statute allowing removal of actions to federal court.

Plaintiffs argue that the removal was procedurally improper under 28 U.S.C. § 1446, which sets a number of procedural requirements for removal, including actions removed under 28 U.S.C. § 1441.   (Pls.' Mot. for Fees at 7-14, ECF 24.)   Plaintiffs assert that Senator Scarnati did not obtain the consent of all defendants including the "Executive Defendants" (Governor Wolf and

3

others in the Executive Branch of the Pennsylvania state government) as required by 28 U.S.C. § 1446(b)(2)(A); and the removal was untimely under 28 U.S.C. § 1446(b)(2)(B). As a result, Plaintiffs assert, they are entitled to attorney's fees and costs under 28 U.S.C. § 1447(c), which allows district courts to award costs and fees associated with an improper removal. (Id.) Plaintiffs also assert Senator Scarnati's assertion of federal jurisdiction was frivolous, and that sanctions are warranted under Rule 11 and the Court's "inherent authority." (Id. at 18-20.)

Senator Scarnati responds that he initially had consent from Speaker Turzai to remove to federal court and it was not necessary to obtain the consent of the executive defendants because they were merely "nominal" defendants; the removal was timely; and he raised at least a colorable theory of federal jurisdiction. (Scarnati Opp. to Pls.' Fee Mot. at 4-15, ECF 25.)

Defendants also make a number of arguments to minimize their financial liability, if any:

- Plaintiffs should not be allowed to collect fees for the preparation of their fee motion ("fees on fees")

- Plaintiffs' counsel based in Washington, D.C. should be reimbursed at lower rates prevailing in Philadelphia

- Plaintiffs should not be allowed to charge for the costs of their Westlaw research

- The Court should not hold Senator Scarnati (in his personal capacity) and his lawyer jointly and severally liable

(Id. at 16-27.)

Plaintiffs dispute that Senator Scarnati has any favorable case law support for any of the propositions he advances, and reply that the hours expended were justified by the exigent nature of the pending removal. Plaintiffs further assert that their Washington-based counsel, despite working pro bono, should be compensated at their usual rate because it would have been impossible to engage other counsel on such short notice, and urge this Court to follow Baldus v.

Members of Wisconsin Gov't Accountability Bd., 843 F. Supp. 2d 955 (E.D. Wis. 2012), a

redistricting challenge in which a court held counsel for legislative defendants and their law firm

jointly and severally liable for plaintiffs' fees and costs in a discovery dispute.

## IV. Analysis

28 U.S.C. § 1447 provides that "a[n] order remanding the case may require payment of just

costs and any actual expenses, including attorney fees, incurred as a result of the removal."  Id.

The Supreme Court recently clarified the standard for an award of attorney's fees when granting

remand:

> Absent unusual circumstances, courts may award attorney's fees under § 1447(c)
> only where the removing party lacked an objectively reasonable basis for seeking
> removal. Conversely, when an objectively reasonable basis exists, fees should be
> denied. In applying this rule, district courts retain discretion to consider whether
> unusual circumstances warrant a departure from the rule in a given case. For
> instance, a plaintiff's delay in seeking remand or failure to disclose facts necessary
> to determine jurisdiction may affect the decision to award attorney's fees. When a
> court exercises its discretion in this manner, however, its reasons for departing
> from the general rule should be faithful to the purposes of awarding fees under §
> 1447(c).

Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005) (affirming denial of fees where the

plaintiff had waited fifteen months to file a remand motion and did not dispute the reasonableness

of the defendant's removal arguments).

The Court finds that the "unusual circumstances" identified in Martin existed in this case,

but will address the parties' arguments regarding jurisdiction.

## A.     Whether an objectively reasonable basis for removal existed

In the present fee petition, the parties dispute whether federal jurisdiction existed in this

case, which asserted only questions of state law.   Senator Scarnati asserts that federal jurisdiction

was proper under Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308 (2005)

and Gunn v. Minton, 568 U.S. 251, 258 (2013), which Plaintiffs dispute.  Gunn established that "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."  568 U.S. at 258.  In its opposition to the fee motion, Senator Scarnati identified the federal question as, "Does a writ issued under Article I, Section 2, Clause 4 of the United States Constitution preclude review of a federal congressional map under state law until the special election set by the writ is completed and the congressional seat filled?"  (Scarnati Opp. to Pls.' Fee Mot. at 13, ECF 26.)

Plaintiffs assert that the Grable and Gunn factors were not met, and the removal was a transparent attempt to interrupt ongoing state court proceedings in which the state courts would have been interpreting their own state's law.  (Pls.' Reply at 12-13, ECF 27.).

### 1. Consent to Removal

Senator Scarnati's removal stated that Senator Scarnati and Speaker Turzai had consented to removal, that consent from the Pennsylvania General Assembly would soon be forthcoming, and that the consent of the executive branch defendants was not required because they were "nominal parties against whom no real relief was sought."  (Removal ¶¶ 26- 27, ECF 1.)  The Notice of Removal cited only case law from other jurisdictions, as discussed further below.

Numerous provisions of federal law govern removal to federal court.  The most general of these is 28 U.S.C. § 1441, which provides in subsection (a) that "[e]xcept as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where

such action is pending."   28 U.S.C. § 1441(a).   A number of more specialized subsections governing removals follow, including 28 U.S.C. § 1443, which allows civil rights actions pending in state court to be removed in certain circumstances.   28 U.S.C. § 1446, "Procedure for removal of civil actions," requires that "[w]hen a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action."   28 U.S.C. § 1446(b)(2)(A) (emphasis added).   Section 1446(b)(3) provides that non-diversity cases, "if the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."   28 U.S.C. § 1446 (b)(3).

In his opposition to the fee motion, Senator Scarnati expanded on his earlier assertion that the executive branch defendants were "nominal" parties who did not need to consent to removal, and for the first time cited Third Circuit precedent in support of that argument.   In Johnson v. SmithKline Beecham Corp., 724 F.3d 337 (3d Cir. 2013), relied upon by Senator Scarnati, the Third Circuit stated in a footnote that "[a]lthough removal generally requires 'unanimity among the defendants,' that requirement does not extend to nominal parties."   Id. at 359 n.27.   Johnson was a diversity personal injury action in which one of the plaintiffs was a Pennsylvania citizen. Id. at 340.   The Third Circuit held that a "dissolved corporation" named as a defendant was a "nominal party with no interest in the litigation," and accordingly ignored its citizenship.   Id. at 358.   In the other Third Circuit case cited by Senator Scarnati, Bumberger v. Ins. Co. of N. Am., 952 F.2d 764 (3d Cir. 1991), also a diversity personal injury action, the Third Circuit vacated the district court's grant of partial summary judgment and its conclusion that the insurer of a company

involved in an auto accident was a nominal party, and remanded for further findings.   These cases are hardly comparable to the status of the executive branch defendants, and do not establish that the executive defendants were nominal parties.   The cases from other jurisdictions Senator Scarnati cites are of no greater help.   See Thorn v. Amalgamated Transit Union, 305 F.3d 826, 833 (8th Cir. 2002) (international union that did not discipline its local affiliate); S.E.C. v. Cherif, 933 F.2d 403, 414-16 (7th Cir. 1991) (record was unclear in district court as to whether the account holder for the lead defendant in an SEC civil enforcement action was a nominal defendant); Busby v. Capital One, N.A., 932 F. Supp. 2d 114, 130 (D.D.C. 2013) (recorder of deeds found to be a nominal party where she was named as a defendant "only insofar as she…received and recorded" allegedly fraudulent documents).

Whether or not the dispute with Speaker Turzai regarding consent to removal was a simple misunderstanding, Senator Scarnati fails to support his claim that the executive branch defendants were "nominal" parties.   Such a position belies the emphasis throughout the removal process of the Governor's role in issuing the writ of election in the Eighteenth Congressional District that Senator Scarnati claimed made the removal timely.   Plaintiffs also point to representations by Senator Scarnati in state court proceedings in this very action disputing that the governor was an "indispensable party":

> Governor Wolf offers two related, but flawed, arguments in support of his request to be dismissed from this suit. First, he claims that because the relief sought can be ordered against the government Respondents, he is not an indispensable party who must be named. In support of this claim he cites cases in which plaintiffs sought to invalidate legislation where there was: (i) no requirement that the legislation be redrafted; and (ii) no request—as there is here—to enact a new law in its place. Other than that, he makes virtually no argument as to why he is not an indispensable party. In actuality, the Governor is indispensable to this Petition, because the nature of the claim and relief sought here require his direct participation. Most importantly, the remedy sought in this case (i.e. passage of a

new redistricting law) legally mandates that the Governor sign any new law.

(State Court Ans. to Gov.s' Prelim. Obj. at 2, ECF 2-2) (emphasis added.)   Senator Scarnati's

position that the executive defendants were indispensable for purposes of state law, and nominal,

but not indispensable for purposes of federal law, is blatantly inconsistent.   As discussed above,

Senator Scarnati cites no factually similar Third Circuit precedent even suggesting that the

executive defendants are nominal.   Senator Scarnati also ignores the holding of the Third Circuit

that when district courts consider remand, "nominal or fraudulently joined parties may be

disregarded," but "indispensable parties may not."   Steel Valley Auth. v. Union Switch & Signal

Div., 809 F.2d 1006, 1010 (3d Cir. 1987).   As Plaintiffs note, this Court has defined a nominal

party to litigation "as one neither necessary nor indispensable to the suit. A party is necessary and

indispensable to the suit if the plaintiff states a cause of action against the party, and seeks relief

from the party."   Dietz v. Avco Corp., 168 F. Supp. 3d 747, 759 (E.D. Pa. 2016) (citation

omitted).   Plaintiffs' state court complaint plainly names the executive defendants as defendants

and requests relief from them in the form of not proceeding with Congressional elections under the

2011 map.   (State Court Compl. at 50, ECF 1-3.)

### 2. Timeliness of the Removal

Moreover, federal jurisdiction did not exist because the removal was untimely.   Where an

action is not initially removable, a defendant may remove "within 30 days after receipt by the

defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other

paper from which it may first be ascertained that the case is one which is or has become

removable."   28 U.S.C. § 1446(b)(3) (emphasis added).   The state court complaint, filed June 15,

2017, had long since been ongoing by the time of the removal, but Senator Scarnati nonetheless

asserted that the Writ of Election issued by Governor Wolf on October 23, 2017 was an "order or other paper" making removal on November 14, 2017 timely.   (Notice of Removal, ECF 1 at 5.) Under existing case law, it was not, and no objectively reasonable basis for jurisdiction therefore existed.

A.S. ex rel. Miller v. SmithKline Beecham Corp., 769 F.3d 204 (3d Cir. 2014), is the lead case in this Circuit on the timeliness of removals made under 28 U.S.C. § 1446(b)(3).   In Miller, the plaintiff, a Pennsylvania resident, had tried unsuccessfully early on in the litigation to remove to federal court, but the action was remanded on the basis of lack of diversity.   Id. at 207.   The plaintiff tried again to remove on the basis of diversity of citizenship shortly after the Third Circuit issued a decision in a different case holding SmithKline Beecham to be a citizen of Delaware—which came down nearly a year and a half after filing the Miller lawsuit in state court. Id.   Although the plaintiffs sought removal within 30 days of the issuance of the previous appellate decision, the Third Circuit found Miller's removal untimely.   The panel held that the "amended pleading, motion, order or other paper" language in 28 U.S.C. § 1446(b)(3) "only 'address[ed] developments within a case,' and, therefore, court decisions in different cases d[id] not count as an 'order.'"   Miller, 769 F.3d at 210 (quoting Dahl v. R.J. Reynolds Tobacco Co., 478 F.3d 965, 969 (8th Cir. 2007)).   See also Green v. R.J. Reynolds Tobacco Co., 274 F.3d 263, 266 (5th Cir. 2001) (collecting cases).

In Papp v. Fore-Kast Sales Co., 842 F.3d 805 (3d Cir. 2016), the Third Circuit stated in a footnote that one of the parties "concede[d] that answers to deposition questions 'can constitute "other paper" for purposes of triggering the time for removal under 28 U.S.C. § 1446(b).'"   Id. at 816 n.10.

10

Romulus v. CVS Pharmacy, Inc., 770 F.3d 67 (1st Cir. 2014), is also instructive. Romulus relied on a treatise to support its holding that correspondence between the plaintiff and the defendant concerning damages qualified as an "other paper":

> In general, "[t]he federal courts have given the reference to 'other paper' an expansive construction and have included a wide array of documents within its scope." 14C Wright & Miller, Federal Practice and Procedure § 3731 (4th ed.). As such,

> [V]arious discovery documents such as deposition transcripts, answers to interrogatories and requests for admissions, as well as amendments to ad damnum clauses of complaints, and correspondence between the parties and their attorneys or between the attorneys usually are accepted as "other papers," receipt of which can initiate a 30–day period of removability.
> Id. (citations omitted).

Romulus, 770 F.3d at 78.

Thus, the general rule appears to be that courts are lenient about construing documents as "other papers" within the context of specific litigation between parties, but much stricter about removal when the party seeking a federal forum relies on a document outside that particular dispute.  See Miller, 769 F.3d at 210; 14C Wright & Miller, Federal Practice and Procedure § 3731 (4th ed.).

In considering the circumstances of this case, the Court will ignore the political considerations that may have been motivating various parties.  However, considering a "plain vanilla" review, it is clear, as a matter of law, that legitimate grounds for removal did not exist because the executive branch defendants were not "nominal" and also the removal was untimely.

In making this conclusion, the Court is not stating any opinion on whether there was "colorable" federal jurisdiction precluding this Court from hearing this case based on language in United States Constitution, Article I, Section 4, clause 1.  Similarly, this Court will not come to

11

any conclusion that improper motive or bad faith is involved.   Strategic choices about jurisdiction are common in litigation.   Gerrymandering, as a Constitutional issue, is a vast territory of legal issues.   The United States Supreme Court has yet to hand down any definitive holding on the extent to which gerrymandering violates the United States Constitution, or the power of state courts over Congressional elections.

**B. Amount of Fees and Costs**

The Court determines that Plaintiffs are entitled to an award of counsel fees and costs.   It is clear under established legal principles that Senator Scarnati did not have any reasonable basis to remove this case to this Court.

As subsequent events have developed, the Supreme Court of Pennsylvania entered an order, reversing the decision of Commonwealth Court Judge Brobson that the court did not have the power to correct the allegedly gerrymandered Congressional districts.   The Pennsylvania Supreme Court, in several highly publicized decisions, ordered a new map drawn and when the legislature did not do so, itself promulgated a new map which will be in effect for the 2018 Congressional elections in Pennsylvania.   League of Women Voters of Pennsylvania v. Commonwealth, 175 A.3d 282, 284 (Pa. 2018) (order announcing forthcoming opinion of the Pennsylvania Supreme Court); League of Women Voters v. Commonwealth, 178 A.3d 737 (Pa. 2018) (opinion invalidating 2011 congressional map); League of Women Voters v. Commonwealth, No. 159 MM 2017, 2018 WL 936941, at *4 (Pa. Feb. 19, 2018) (adopting its own plan).   The United States Supreme Court rejected attempts to reverse these decisions of the Pennsylvania Supreme Court. Turzai v. League of Women Voters of Pennsylvania, No. 17A909, 2018 WL 1372352, at *1 (U.S. Mar. 19, 2018).

1. **Amount of Fees**

In general, "a prevailing party's attorneys should be compensated based on market rates in the vicinage of the litigation.  However, if a prevailing party can show that it required the particular expertise of counsel from another vicinage, or that local counsel were unwilling to take on the litigation, then it will be entitled to compensation based on prevailing rates in the community in which its attorneys practice."   Interfaith Cmty. Org. v. Honeywell Int'l, Inc., 426 F.3d 694, 699 (3d Cir. 2005).

Plaintiffs argue that the Washington-based lawyers at Arnold & Porter Kaye Scholer ("Arnold & Porter") should be reimbursed at their normal Washington, DC rates, rather than lower rates applicable in Philadelphia:

> Plaintiffs' counsel should be awarded fees at their standard billing rates under the second exception to the "forum rate rule," which applies "when local counsel are unwilling to handle the case." Interfaith Community Organization v. Honeywell Intern., Inc., 426 F.3d 694, 705 (3d Cir. 2005) (citations omitted). Plaintiffs' counsel learned of the removal mid-afternoon on Wednesday and filed the emergency motion to remand within 12 hours. It is obvious that it would have been impossible to secure the services of a local firm to research and brief the remand motion within that time period, much less to do it *pro bono*, like Arnold & Porter. Moreover, the immediate and extraordinary threat posed by the removal left Plaintiffs' counsel with no choice but to immediately respond with available resources.

(Pls.' Reply Br. at 4, ECF 27.)

This Court concludes that Plaintiffs are not entitled a calculation of fees on any basis other than what is appropriate under the prevailing and customary Philadelphia legal fees.   The Court does not rely on any cases distinguishing between so-called "chief counsel" and so-called "local counsel."   The two firms involved in representing the Plaintiffs from the start, Arnold & Porter and the Public Interest Law Center ("PILCOP"), are both well-known and well-qualified to represent the Plaintiffs in this case.   Although the undersigned did not get to observe them in any

13

detail, the Court has had significant opportunity to become familiar with the outstanding work of the Public Interest Law Center of Philadelphia.   The PILCOP attorneys are renowned for taking on difficult cases and achieving excellent results for their clients.[1]   Thus, the Court rejects any reliance on differences between so-called "chief counsel" and "local counsel."   Whether the work was done by the Arnold & Porter firm or by PILCOP, or jointly, all of the written work in this case in this Court, although very limited because of the eventual agreement by Senator Scarnati to withdraw the removal, was excellent.   A good deal of urgent research and preparation of the motion to remand was necessary and deserves compensation.

The Court also agrees with Plaintiffs that this amounted to an "emergency situation." This case is one of tremendous public importance.   The removal was filed just as the trial that had been ordered by the Pennsylvania Supreme Court was about to start.   Plaintiffs had good and sufficient reasons for wanting this case to remain in the Pennsylvania state court system, and the removal threatened the success of that jurisdictional strategy.[2]

Although the Court has decided to award attorneys' fees and will take into the account the emergency nature of the situation, there was some perhaps unavoidable duplication of effort by the Arnold & Porter and PILCOP lawyers.   This is not a critical comment, but rather reflects the urgency of reviewing the law and getting the remand papers filed.   Given the understandable urgency with which Plaintiffs' attorneys worked, between the time that the removal was filed, and it being withdrawn some hours later, as this Court was about to embark on a hearing on the Plaintiffs' petition for remand, the time expended and fees requested are probably more than in an

---

[1] Two of my former law clerks have been attorneys at PILCOP, but are no longer working there.
[2] The undersigned has recognized the historical background of gerrymandering and the judicial treatment of gerrymandering in the United States Supreme Court and lower courts, in a dissenting opinion in Agre v. Wolf, 284 F. Supp. 3d 591, 648-735 (E.D. Pa. 2018).   An appeal in pending in the United States Supreme Court.

ordinary case.   However, not every hour spent by numerous attorneys in two different locations, working on an important matter, requires 100% compensation from an opposing party even though the merits favor the Plaintiffs.

Counsel for Plaintiffs have submitted voluminous information about their normal hourly rates.   Considering the brief period of time that is at issue here, the Court will not engage in complex arithmetic.   The Court believes a fair result is to take the total number of hours spent by all attorneys, 82 hours, reduce it by 20% to account for overlap, and apply a blended hourly rate, $400 per hour, which appears to be a fair median hourly rate for the PILCOP lawyers.[3]   The Court believes that the resulting award of $26,240.00 is a fair measure of fees to be awarded in this case. As for the claimed expenses, the Court will award all of the expenses which have been documented by Plaintiffs' counsel, including the Westlaw research costs, totaling $3,120.02.

**a.   Whether time to prepare the fee petition is itself compensable**

The above calculation includes time spent preparing the fee petition.   Plaintiffs cite a number of district court cases outside this Circuit in which the court has awarded fees for litigating a fee petition under 28 U.S.C. § 1447(c) have been found to be compensable.   See, e.g., MFC Twin Builders LLC v. Farjado, 2012 WL 3862399, at *8 (E.D. Cal. 2012); Yazdani v. Access ATM, 474 F. Supp. 2d 134, 137-38 (D.D.C. 2007); Albion Pacific Property Resources, LLC v. Seligman, 329 F. Supp. 2d 1163, 1175 (N.D. Cal. 2004).   Neither this Court nor the Third Circuit has squarely addressed whether time spent preparing § 1447(c) fee petitions is compensable. However, it has allowed "fees on fees" in civil rights cases; without fees on fees, "the attorney's fee to which he or she is entitled by law is in fact diminished."   Hernandez v. Kalinowski, 146

---

[3] As a pro bono law firm, PILCOP has some, but not extensive, opportunities to calculate the appropriate hourly rate which it would use for fee petitions such as this.

F.3d 196, 199 (3d Cir. 1998).   The court continued with an example:

> For example, assume a plaintiff succeeds on the merits of a civil rights claim and, in doing so, incurs $10,000 in "direct and reasonable" costs and attorney's fees. That fee represents the attorney's time expended. Further assume that the plaintiff's attorney is forced to spend an additional $2000 in time to compel the defendant to pay the $10,000 costs and fees owed. If the plaintiff is not allowed to recover the "fees on fees," the plaintiff would not receive the $2000 to pay the attorney. In the case of an impecunious plaintiff, as most prisoners are, the end result would be that the attorney would in fact receive a fee based on time that is less than that authorized by law.

Id.   Defendants try to distinguish this case as purely a civil rights case, but the mathematical point holds: only if a court awards fees on fees can a party truly be made whole for the time and costs incurred by their attorneys.

### b. Westlaw

Plaintiffs, who request $2,185 in Westlaw fees, are correct that Westlaw fees are compensable in Third Circuit.   In 1980, the Third Circuit held that "[u]se of computer-aided legal research such as LEXIS, or WESTLAW, or similar systems, is certainly reasonable, if not essential, in contemporary legal practice."   Wehr v. Burroughs Corp., 619 F.2d 276, 285 (3d Cir. 1980).   However, the court cautioned that "the amount of use must be reasonable in order to be allowed."   Id.   Plaintiffs assert in their opening brief that Westlaw fees are regularly passed on to clients.   (Pls.' Br. at 18.)

Defendants are correct that it is entirely unclear from Plaintiffs' documentation whether the Westlaw fees were even incurred in connection with this litigation.   (See Arnold & Porter Kaye Scholer LLP Costs, ECF 24-3).   Plaintiffs do not contest this in their reply brief.   The narrative for the largest single entry of Westlaw charges on November 15, 2017 (the day before oral argument) by associate Sara Murphy is "Westlaw Computer Research by ROBINSON JOHN

16

MULTI-SEARCH TIME CLASS."  (Id.)  No attorney named John Robinson appeared in this case, and it is unclear who this is.  However, this description of the Westlaw research appears immediately below a lengthy description of the tasks undertaken by the various attorneys, including the precise topics Ms. Murphy researched.  The Court finds that the Westlaw research was reasonable.

## V.   Who Should Be Responsible for Payment of These Fees and Costs

Under all the circumstances, the Court finds that Senator Scarnati should personally be liable for these fees and costs.  The Court has not located any federal law authority as to whether Senator Scarnati may be reimbursed.

## VI. Conclusion

For the reasons stated above, the Court will make an award of counsel fees and costs to PILCOP.  See attached order.

O:\CIVIL 17\17-5137 League of Women Voters v Commw of PA\17cv5137 Memorandum.docx